Jerry M. HERRON *v.* James JONES, III et al

82-41                                    637 S.W.2d 569

Supreme Court of Arkansas
Opinion delivered July 12, 1982

*Bailey, Williams, Westfall, Lee & Fowler,* by: *James A. Williams;* and *Friday, Eldredge & Clark,* by: *Phillip Malcom,* for appellant.

*Henry & Duckett,* by: *David P. Henry* and *James M. Duckett,* for appellees.

GEORGE ROSE SMITH, Justice. This medical malpractice suit was brought by the appellees, the surviving husband and minor children of Shirley L. Jones, whose death is alleged to have been caused by the negligence of the appellant, a physician. In December, 1981, the suit had been pending for 16 months, all discovery had been completed, and the case was set for a four-day trial in February. On December 16 the plaintiffs' attorneys, Henry & Duckett, filed a motion asking that all defense counsel — the firm of Friday, Eldredge & Clark, Phillip Malcom (the member of the Friday firm handling the case), and a Texas law firm acting as co-counsel — be disqualified from further participation in the case because Pat Brown Damon, a legal secretary who had worked for Henry & Duckett for eleven months, had become a secretary for the Friday firm, and particularly for Malcom, in November, 1981. The motion for disqualification asserted that Canons 4 and 9 of the Code of Professional Responsibility, 33 Ark. L. Rev. 643 (1980), would be violated by the lawyers' continued participation in the case.

The trial judge, relying primarily on *State of Arkansas* v. *Dean Foods Products Co.,* 605 F.2d 380 (8th Cir. 1979), ruled that defense counsel were all disqualified from proceeding further in the case, not because there was any actual impropriety but because there was a violation of Canon 9:

"A Lawyer Should Avoid Even the Appearance of Professional Impropriety." The case comes to this court for an interpretation of our Code of Professional Responsibility. Rule 29 (1) (c).

Preliminarily, we must pass upon the appellees' motion to dismiss the appeal on the ground that an order disqualifying counsel is not a final order within Rule 2 of the Rules of Appellate Procedure. It is certainly not final in the sense that the case is still to be tried on its merits, but the appellant argues that we should treat the disqualifying order as falling within an exception recognized in federal procedure, by which an order is appealable if it (1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand* v. *Livesay,* 437 U.S. 463 (1978).

Even though orders disqualifying counsel are a comparatively recent development in the law, the appealability of such orders has already given the federal courts much difficulty. At first it was held in some circuits that all rulings on motions to disqualify counsel were final and appealable, whether the motion was granted or denied. In at least three circuits, however, the courts of appeal have overruled prior cases in reaching what is now the prevailing position: An order denying a motion to disqualify counsel is not appealable, although an order granting such a motion is appealable. *Armstrong* v. *McAlpin,* 625 F.2d 433 (2d Cir. 1980); *Melamed* v. *ITT Continental Baking Co.,* 592 F.2d 290 (6th Cir. 1979); *Firestone Tire & Rubber Co.* v. *Risjord,* 612 F.2d 377 (8th Cir. 1980). The Supreme Court settled the issue by affirming, in effect, the *Firestone* case. *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U.S. 368 (1981), vacating the intermediate court's order for want of jurisdiction, but recognizing its correctness.

In harmony with the federal courts' conclusions, we have no doubt that an order disqualifying counsel *should* be appealable. This is true not only because a litigant may be erroneously deprived of representation by the counsel of his

choice, but also because if the order of disqualification is not appealable the litigant will be compelled to employ other counsel and to submit to a useless trial before he learns by appeal that the disqualification order was wrong and he is entitled to start all over again.

We are fortunate, however, in not being bound, as the federal courts are, by a statute restricting appellate review to final orders. 28 U.S.C. § 1291. When our Rules of Appellate Procedure were drafted and adopted in 1978, there was no immediate necessity for either the drafting committee or the court to consider the appealability of orders disqualifying counsel. That necessity now confronts us. We are not willing, however, to embrace the federal exception to the ordinary requirement of finality — an exception that has been a prolific source of uncertainty, for who can pre-determine with assurance when an issue is "important" and "completely separate from the merits of the action" and "effectively unreviewable" on final appeal? We therefore prefer the simple course of amending Appellate Procedure Rule 2 to provide that an order disqualifying counsel is appealable. A per curiam order to that effect is being entered today. For a comparable situation see *Gallman* v. *Carnes*, 254 Ark. 155, 492 S.W.2d 255 (1973).

On the merits, the proof is that before Mrs. Damon left Henry & Duckett she was cautioned not to disclose con-fidential information about this case. When she became a secretary at the Friday firm, she was told at the outset that she would have nothing to do with this case, for which the file was kept in Malcom's own office. Mrs. Damon herself stated in an affidavit that she had had no contact with the case since being employed by the Friday firm, had not spoken to anyone in the firm about the case, and would not do so in the future.

Thus, there is no suggestion of impropriety in fact. In-stead, appellees emphasize the language of Canon 9, that a lawyer must avoid even the appearance of impropriety. Granted. But we must keep in mind that the *Dean Foods* case and similar decisions have all dealt with the situation in which the lawyer himself has changed from one firm to

another, with a possible conflict of interest. Here, however, it was not a lawyer but a legal secretary who changed her employment. We have no doubt that the Canon 4 duty to preserve the confidences of a client applies to all the employees of a law firm, but Canon 9 is directed specifically to lawyers and to no one else. Counsel for the appellees conceded at the oral argument that they have found no case in which a lawyer has been disqualified in circumstances similar to those now presented.

The proof demonstrates beyond question that every precaution was taken to avoid any disclosure of confidential information by Mrs. Damon and that no such disclosure occurred. Moreover, there is much testimony that temporary secretarial help is continually found to be necessary by many law firms in Pulaski County. The representative of a concern engaged in the business testified that her firm provides the temporary services of experienced legal secretaries on a regular basis to between forty and fifty law offices in the community. Twenty percent of that company's secretaries work for from eight to ten different law firms in a year; the other eighty percent work for from two to eight firms in a year. There was also testimony that law firms prefer to employ legal secretaries with prior experience, so that permanent secretaries as well as temporary ones frequently move from one law office to another. Thus complete avoidance of a situation like that now presented is impossible.

We need not detail the abundance of similar testimony, which was uncontradicted. We are convinced that any appearance of impropriety, any presumption of impropriety, that might have arisen in this instance from Mrs. Damon's change of jobs was effectively overcome by the undisputed testimony. The trial judge was mistaken in sustaining the motion to disqualify defense counsel.

Reversed.